UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LISA M. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:13-CV-352-CAN |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On April 24, 2013, Plaintiff, Lisa M. Brown ("Brown"), filed her complaint in

this Court. On October 31, 2013, Brown filed her opening brief requesting that this Court

reverse and remand this matter to the Commissioner for further consideration, including a

new hearing and decision consistent with the principles outlined in her brief. On

November 7, 2013, Defendant, Commissioner of Social Security, Carolyn W. Colvin

("Commissioner"), filed her response brief. Brown filed a reply brief on January 30,

2014. This Court granted Commissioner's Motion to file a sur-reply brief, which was

filed on February 26, 2014. On March 27, 2014, Brown filed a sur-response brief with

this Court's permission. This Court may enter a ruling in this matter based on the parties

consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.     PROCEDURE**

On March 12, 2010, Brown filed an application for Supplemental Security

Income ("SSI") alleging a disability due to status post closed head injury with a

subarachnoid hemorrhage, scalp laceration, pelvic fractures, spleen fracture, right

shoulder fracture secondary to car accident, obesity, organic mental disorder, and adjustment disorder with depressed/anxious mood beginning February 23, 2010. Her claims were denied initially on September 21, 2010, and also upon reconsideration on January 14, 2011. Brown appeared at a hearing before an Administrative Law Judge ("ALJ") on February 6, 2012.

On February 21, 2012, the ALJ issued a decision holding that Brown was not disabled under section 1614(a)(3)(A) of the Social Security Act. The ALJ found that Brown had not engaged in substantial gainful activity since March 12, 2010, and that her status post closed head injury with subarachnoid hemorrhage, scalp laceration, pelvic fractures, spleen fracture, right shoulder fracture secondary to a car accident, obesity, organic mental disorder, and adjustment disorder with depressed/anxious mood constituted severe impairments. However, the ALJ found that Brown did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Brown retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b). The ALJ found she could lift or carry and push or pull up to ten pounds frequently and twenty pounds occasionally; sit, stand, or walk for a total of about six hours in an eight-hour workday; occasionally climb ramps and stairs, and balance and stoop. However, Brown could never climb ladders, ropes, or scaffolds; crouch, kneel, or crawl; and she must avoid even moderate exposure to hazards such as unprotected heights. The ALJ further found that Brown retains the ability to understand, remember and carry out short, simple, repetitive instructions; sustain attention and concentration for two-hour periods at a time and for eight-hours in

the workday on short, simple, repetitive instructions; use judgment in making work decisions related to short, simple, repetitive instructions; maintain a regular attendance and be punctual within customary tolerances; and perform activities within a schedule. The ALJ found that Brown requires an occupation with set routine and procedures, and few changes during the workday with no fast paced production. The ALJ then found that although Brown is unable to perform her past relevant work as packager, there are jobs that exist in significant numbers in the national economy that Brown can perform.

On February 22, 2013, the Appeals Council denied review of the ALJ's decision making it the Commissioner's final decision. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981. On April 24, 2013, Brown filed a complaint in this Court seeking a review of the ALJ's decision.

## II.    ANALYSIS

### A.    Facts

Brown was a thirty-five year old female at the time the ALJ denied her claims. She has a tenth grade education and performed past relevant work as a packager.

#### 1.    Claimant's Hearing Testimony

At the hearing, Brown testified that she suffered from concentration problems, lack of memory, problems focusing, right arm pain, back pain, right leg pain, and pelvic pain which caused difficulty sitting and standing as a result of a shattered pelvis. In a typical day, she did minor chores around the house and assisted her children with homework when possible. Brown indicated she was able to take care of her personal needs and drove to the store for shopping purposes. She testified that on occasion she would take her children to the park, play card games with a friend, and go out to dinner.

She testified she regularly treated her body pain, concentration, and memory problems with prescribed medications and non-prescription treatments. Brown indicated only one side effect, occasional upset stomach, from a non-prescriptive medication. She testified that her condition has not improved despite taking medication and attending various therapies. Brown testified that pain, concentration problems, and lack of memory prevented her from completing tasks such as cooking, mowing, and snow removal. Throughout the day, Brown mainly completed light household work and watched television or movies, but indicated difficulty maintaining attention throughout an entire program. Brown testified that she could sit and stand for about fifteen minutes at time and walk for about one city block. In addition, Brown believed she could lift about ten pounds.

2.      <u>Medical Evidence Regarding Mental Impairments</u>

Brown was admitted on February 23, 2010, to Memorial Hospital of South Bend following her involvement in a major motor vehicle accident. Subsequent to various diagnostic tests, Brown was found to have a scalp laceration, subarachnoid hemorrhage or bleeding to the brain, pelvic factures, a right shoulder fracture, and a spleen fracture. Notes from Dr. Heidi Collins, a physical rehabilitation specialist, show that Brown's major injury was a head injury, which would require long-term treatment. During her hospitalization, however, Brown also participated in cognitive testing that revealed she was agitated and confused. With medications, Brown became calmer, capable of focusing, easier to direct, and less agitated. Brown was discharged from the hospital on April 13, 2010, on the condition of "satisfactory" and was admitted to Hook

Rehabilitation Center. At the time of discharge, Brown was only taking over-the-counter medication for pain, which was reportedly beneficial.

Dr. Michael P. Shain, a psychiatrist, evaluated Brown upon her admission to the Hook Rehabilitation Center. Dr. Shain reported that Brown had a history of polysubstance abuse, but that she intended to quit using drugs. Dr. Shain then conducted a brief mental status exam revealing that Brown's concentration, learning and five-minute delayed recall for verbal information, and cognitive flexibility were intact, but that she had mild organizational difficulties. Dr. Shain noted she had been on Xanax for anxiety, but was now on Trazadone. Dr. Shain recommended and performed neurological testing for Brown, leading to her diagnosis of cognitive disorder, NOS, secondary to traumatic brain injury. Notes from Brown's neurological testing further show Brown had significant impairments with cognitive functioning, but continual ongoing improvements were expected. Brown was released from Hook Rehabilitation Center on May 26, 2010, at which time she was instructed not to drive, to have twenty-four hour supervision, and to participate in outpatient physical therapy, home occupational therapy, and speech therapy.

Two days after leaving Hook Rehabilitation Center, Brown received a speech therapy evaluation by Jill Oscarson, an occupational therapy evaluation by Elaine Stenslik, and a physical therapy evaluation by Brian Kanyer. Notes from Ms. Oscarson show Brown reported she was doing "quite well" and the goal was to increase problem solving and memory. Ms. Stenslik's notes indicate that Brown was dressing herself with modified independence, showering and toileting with supervision, and preparing meals with modified independence. Mr. Kanyer noted that she had problems with balance,

coordination, endurance, and gait deviation. Mr. Kanyer prepared at treatment plan for Brown and estimated that her rehabilitation potential was very good.

Dr. Collins, Brown's physical rehabilitation specialist, reported on Brown's status on July 6, 2010. By that time, Brown had been referred for neurological services, but had not scheduled her first visit. However, Brown had progressed to twenty-four hour independence at home and was handling her own self-care and daily living activities. Dr. Collins also indicated she would continue to improve.

In September 2010, consultative psychological examiner Dr. Sharon Sacks evaluated Brown. Brown told Dr. Sacks that she was losing things easily, had a poor memory for daily events, needed to have instructions repeated, was forgetful, and had difficulty with retention. Dr. Sacks' mental examination showed Brown was unable to successfully complete serial sevens. Based on her administration of the WMS-IV memory test, Dr. Sacks found that Brown's visual memory was better than expected, her ability to recall verbal and visual information immediately was in the average range, and her ability to recall verbal and visual information after a twenty to thirty minute delay was in the average range. Dr. Sacks assigned Brown a current Global Assessment of Functioning ("GAF") score of 57.[1]

In response to Brown's application for disability benefits, at least six state agency medical consultants examined Brown or reviewed her medical records. First, non-examining psychologist Dr. B. Randal Horton found Brown no longer had any severe mental limitations. Second, Dr. William Shipley, a non-examining psychologist,

---

[1] A Global Assessment of Functioning ("GAF") score is based on a 100-point scale rating an individual's overall psychological, social, and occupational functioning. AM. PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., text rev.2000). A score between 51 and 60 suggests moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *Id.*

reviewed and affirmed Dr. Horton's findings. Third, in September 2010, Dr. Ralph

Inabnit examined Brown and found that Brown continued to demonstrate poor insight as

to the severity of her deficits, had difficulty incorporating her activity restrictions into her

day-to-day activities, and was ambulatory without the use of a cane or a walker. Fourth,

Dr. Mangala Hasanadka, a non-examining physician, found Brown could lift, carry, push,

or pull up to fifty pounds occasionally and up to twenty-five pounds frequently; stand, sit,

or walk for six hours out of an eight hour workday; and could occasionally climb ladders,

ropes, scaffolds, but should avoid even moderate exposure to hazards. Lastly, Dr. J. Hoke

and Dr. J. Sands reviewed and affirmed the assessment of Dr. Hasanadka.

  After the consultative examinations and reports, Brown continued to seek

treatment for her mental conditions. In December 2010, Brown saw neuropsychologist,

Dr. Nasar Katariwala who prescribed Namenda following a neurocognitive memory

evaluation. Brown's next visits to Dr. Katariwala were in April and July 2011. During

Brown's July visit, Dr. Katariwala noted Brown was taking Aricept, Namenda, and

Ritalin and that Brown felt she was neuro-cognitively fine. In January 2012, Dr.

Katariwala completed a "Medical Assessment of Ability to Do Work-Related Activities

(Mental)" and found Brown had a fair to poor ability to adjust to a job. Specifically, Dr.

Katariala found Brown had a poor ability to relate to co-workers, deal with the public,

interact with supervisors, deal with work stresses, function independently, and maintain

attention concentration. Dr. Katariwala also indicated Brown had a fair ability to follow

work rules and use judgment.

C.      Standard of Review

In reviewing disability decisions of the Commissioner, the Court shall affirm the

ALJ's decision if it is supported by substantial evidence and free of legal error. *See* 42

U.S.C. 405(g) (2006); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v.*

*Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912,

915 (7th Cir. 2003). "Substantial evidence" is more than a mere scintilla of relevant

evidence that a reasonable mind might accept to support such a conclusion. *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  To determine whether substantial evidence supports

the Commissioner's final decision, a Court reviews the whole record including evidence

that detracts from the Commissioner's findings in the decision. *Arkansas v. Oklahoma*,

503 U.S. 91, 113 (1992); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477-88

(1951). A reviewing court is not to substitute its own opinion for that of the ALJ's or to

re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his

conclusion. *Haynes*, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks

evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d

535, 539 (7th Cir. 2003). However, and ALJ need not provide a "complete written

evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363,

370 (7th Cir. 2004) (*quoting Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). An ALJ's

legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

To be entitled to supplemental security income under 42 U.S.C. § 1381a, Brown

must establish that she is disabled. *See* 42 U.S.C. § 423(a)(1)(D). The Social Security Act

defines a disability as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairment meets or equals any impairment listed in the regulations and therefore is deemed so severe as to preclude substantial gainful activity; (4) the claimant is able to perform her past relevant work given her RFC; and (5) the claimant can adjust to other work in light of her RFC. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An affirmative answer at either step three or step five establishes a finding of disability. *Briscoe*, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the Commissioner acknowledges the impairment and finds the claimant to be disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. App. 1, Subpart P, § 404. However, if the impairment is not so listed, the ALJ assess the claimant's RFC, which is then used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. 404.1520(e)-(g). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. *Young*, 362 F.3d at 1000.

D.       Issues For Review

In this case, the Court must ascertain whether the ALJ's RFC determination for

Brown is supported by substantial evidence. In her opening brief, Brown initially argued

that the ALJ's opinion does not support her RFC determination because the ALJ

improperly evaluated the opinion of her treating physician, Dr. Nasar Katariwala.

1.       The ALJ properly weighed Dr. Katariwala's medical opinion
          evidence in assessing Brown's RFC.

An individual's RFC demonstrates her ability to do physical and mental work

activities on a sustained basis despite functional limitations caused by any medically

determinable impairment(s) and their symptoms, including pain. 20 C.F.R. §§ 404.1545,

416.945; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider

all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545, 416.945. The

record may include medical signs, diagnostic findings, the claimant's statements about

the severity and limitations of symptoms, statements and other information provided by

treating or examining physicians and psychologists, third party witness reports, and any

other relevant evidence. SSR 96-7p 1996. "Careful consideration must be given to any

available information about symptoms because subjective descriptions may indicate more

severe limitations or restrictions than can be shown by objective medical evidence

alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical

evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1521(c).

Therefore, when the record does not support specific physical or mental limitations or

restrictions on a claimant's work-related activity, the ALJ must find that the claimant has

no related functional limitations. *See* SSR 96-8p.

Brown seeks a remand for further consideration of the medical opinion of her treating physician Dr. Nasar Katariwala. She contends that the ALJ improperly evaluated the opinion of Dr. Katariwala and erred by not assigning controlling weight to his opinion. She also alleges that the ALJ "cherry-picked" the evidence and cited evidence that mostly supports his finding while leaving out contrary evidence regarding Brown's ability to function independently with daily living activities.

In determining the proper weight to accord medical opinions, the ALJ must consider factors including the claimant's examining and treatment relationship with the source of the opinion; the physician's specialty; the support provided for the medical opinion; and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(1)-(6); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). A "treating source" is a medical professional who provides medical treatment or evaluation to the claimant and has or had an ongoing relationship with the claimant. 20 C.F.R. § 404.1502. An ongoing relationship exists when the medical record shows that the claimant saw the source frequently enough to be consistent with accepted medical practices for the treatment of the medical condition. *Id.*

An ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 200); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-8p; SSR 96-2p. Generally, ALJs weigh the opinions of a treating source more heavily because he is more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. §§

11

404.1527(d)(2), 416.927(d)(2). However, a claimant is not entitled to benefits merely

because a treating physician labels her as disabled. *Dixon v. Massanari*, 270 F.3d 1171,

1177 (7th Cir. 2001). A medical opinion may be discounted if it is internally inconsistent

or inconsistent with other substantial evidence in the record. *Clifford*, 227 F.3d at 870.

While the ALJ is not required to award a treating physician controlling weight, the ALJ

must articulate, at a minimum, his reasoning for not doing so. *Hofslien*, 439 F.3d at 376-

77. Although the ALJ is required to consider and discuss a treating physician's opinion,

*see* 20 C.F.R. § 416.927(c)(2), the ALJ is not bound by conclusory statements of doctors

or medical opinions that are unsupported or inconsistent with substantial evidence in the

record, *see Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's reasoning

should be based on the relevant factors applied to all medical opinions as stated above.

*See* 20 C.F.R. § 404.1527(d)(2)-(6).

  In this case, the ALJ accorded no weight to Dr. Katariwala's opinion. Brown

challenges the weight afforded to Dr. Katariwala's opinion by the ALJ. In support,

Brown argues that the ALJ improperly evaluated Dr. Katariwala's Medical Assessment

of Ability to do Work-Related Activities Mental ("Mental Work-Related Assessment"),

which indicated that Brown was not ready to return work. Specifically, the ALJ found

inconsistencies between Dr. Katariwala's assessment of Brown's ability to "make simple

work-related decisions" and her abilities to "respond appropriately to usual work

decisions" and "deal with changes in a routine work setting" under the category of

"Sustaining Basic Work-Related Activities." Brown supports her interpretation of the

separate abilities within the "Sustaining Basic Work-Related Activities" category by

referencing the Social Security Administration's Program Operations Manual System

("POMS").[2] In POMS, the ability to make simple work-related decisions comes under the category of "Sustained Concentration and Persistence" which is defined as an individual's ability to sustain an ongoing mental performance for a full workday. *See* POMS DI 24510.061B2a. The ability to respond appropriately to changes in the work setting is under the "Adaptation" category, which is defined as the individual's ability to integrate other areas of functioning. *See* POMS DI 24510.061B4. Review of the ALJ's opinion shows that Brown's argument is misplaced.

First, the ALJ clearly acknowledges Dr. Katariwala's status as Brown's treating neuropsychologist for over a year prior to the hearing. Doc. No. 9-2 at 33. Second, in considering whether Dr. Katariwala's opinion was entitled to controlling weight, the ALJ discussed several ways that Dr. Katariwala's opinion that Brown was not ready to return to work was not sufficiently supported. Specifically, the ALJ shows that Dr. Katariwala's opinion was not consistent with other evidence in the record. The ALJ noted the conflict between Brown's testimony, admitting she was adequately taking care of herself as well as her children, and Dr. Katariwala's opinion that Brown was unable to independently function.

Earlier in his opinion, the ALJ also highlights parts of Brown's testimony, her mother's testimony, and her medical records that support his conclusion that inconsistencies between Dr. Katariwala's opinion and the record warranted rejection of

---

[2] The Commissioner argues Brown's contention that the ALJ violated the agency's POMS in finding Dr. Katariwala's opinion internally inconsistent should be deemed waived because it was insufficiently developed in her opening brief. Arguments raised for the first time in a reply brief are waived. *See Williams v. Dieball,* 724 F.3d 957, 961 (7th Cir. 2013); *accord Herron v. Comm'r of Soc. Sec.,* 788 F. Supp. 2d 809, 819 (N.D. Ind. 2009); *Campbell v. Hall,* 624 F. Supp. 2d 991, 10008 (N.D. Ind. 2009). A party has waived an argument where such has not been fully developed on appeal. *See Spath v. Hayes Wheels Int'l Indiana Inc.,* 211 F.3d 392, 397 (7th Cir. 2000). This Court acknowledges the Commissioner's argument of waiver, however, it is unpersuasive and does not disturb the determination that the ALJ sufficiently supported his decision of finding Dr. Katariwala's opinion inconsistent.

the opinion that Brown was unable to function independently. Doc. No. 9-2 at 32. For instance, the ALJ considered Brown's own statement that she could perform household chores, assist her children with homework, complete the family shopping, and drive a car among other things when determining how to weigh Dr. Katariwala's opinion. In addition, the ALJ noted Brown's statement to her occupational therapist in July 2010 that she had no difficulty with activities of daily living, which the ALJ found corroborated by Brown's mother's testimony. *Id.*

The ALJ also articulated inconsistencies within Dr. Katariwala's opinion. The ALJ directly reported Dr. Katariwala's opinion that Brown had a fair ability to follow work rules and use judgment, but a poor ability to related to co-workers, deal with the public, interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration. Doc. No. 9-2 at 33. The ALJ then explained that Dr. Katariala's Mental Work Related Assessment included conflicting statements about Brown's alleged work limitations. For instance, the ALJ noted Dr. Katariwala's statement that Brown had only a slight loss in responding appropriately to co-workers and supervisors and compared it to Dr. Katariwala's statement that Brown had a poor ability to deal with co-workers and supervisors. *Id.*

In addition, the ALJ highlighted the inconsistency between Dr. Katariwala's opinion that Brown had a total loss in making simple work related decisions as compared to his notation that Brown had only a slight loss in responding to usual work situations and dealing with changes in a work setting. *Id.* at 754-755. The ALJ also explicitly cited Dr. Katariwala's own treatment notes stating that Brown's memory impairment was stable on medications. Furthermore, the ALJ's referenced documentation from various

14

physicians demonstrating Brown's progress at various stages of her conditions, including notes upon Brown's discharge from the hospital on April 13, 2010, on the condition of "satisfactory" taking only over-the-counter medication for pain. Doc. No. 9-2 at 30. Thus, having articulated inconsistencies between Dr. Katariwala's opinion and the record, including Dr. Katariwala's own notes and opinions, the ALJ met his burden to explain why Dr. Katariwala's opinion was not entitled to controlling weight. Therefore, the ALJ's RFC determination is supported by substantial evidence and should not be disturbed.

2.      *Chenery* doctrine

Additionally, Brown contends the ALJ violated the *Chenery* doctrine. Specifically, Brown argues the ALJ failed to use the opinion of consultative examiner Dr. Sacks to support his decision to reject Dr. Katariwala's opinion. The Commissioner, however, contends that the ALJ did not violate the *Chenery* doctrine as he demonstrated his reliance in part on Dr. Sack's report in finding Dr. Katariwala's opinion inconsistent with the record.

Principles of administrative law require the ALJ to rationally articulate the grounds for his decision regarding whether there is enough evidence in the record to support his decision per the *Chenery* doctrine. *See SEC v. Chenery Corp.,* 318 U.S. 93-95 (1943) *cited in Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002). The *Chenery* doctrine permits reading the ALJ's decision as a whole and with common sense. *See Johnson v. Apfel,* 189 F.3d 561, 564 (7th Cir. 1999). The ALJ's minimal articulation of the evidence "show[s] that the ALJ considered the evidence the law requires him to consider," *Stephens v. Heckler,* 766 F.2d 284, 287-88 (7th Cir. 1985), and allows the

15

court to trace the path of the agency's reasoning. However, when the ALJ ignores "an entire line of evidence," the Seventh Circuit has held that the decision does not build a logical bridge and the agency's lawyers may not rectify the error by identifying "evidence the agency apparently did not consider." *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012).

The Court is not persuaded that the ALJ violated the *Chenery* doctrine. The ALJ considered Dr. Sack's report of Brown's adequate memory when limiting Brown's concentration, persistence, or pace abilities. Doc. No. 9-2 at 31. Furthermore, the ALJ articulated inconsistencies in Dr. Katariwala's opinion with the evidence showing that Brown had no problem with simple, short, and repetitive tasks. *Id.* at 33. The ALJ articulated his decision in a manner that enables the Court to follow his line of reasoning, thus there is no violation of the *Chenery* doctrine.

## III.    CONCLUSION

Because the ALJ properly explained his rationale for giving treating physician, Dr. Katariwala less than controlling weight, his RFC determination is supported by substantial evidence. Therefore, Brown's motion to reverse or remand is **DENIED**. (Doc. No. 16). This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 18th Day of July, 2014.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge

16